UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NSK CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 1:09-cv-52-SEB-MJD |
| | ) |
| OBERLE & ASSOCIATES, INC. and OBERLE LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| OBERLE & ASSOCIATES, INC., | ) |
| | ) |
| Third Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| WHISENHUNT CONSTRUCTION, INC., | ) |
| | ) |
| Third Party Defendant. | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This cause is before the Court on Plaintiff's Motion for Partial Summary Judgment [Docket No. 52], filed on November 15, 2010, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking partial summary judgment only on liability. This case involves a claim for damage to machinery and equipment owned by Plaintiff, NSK Corporation ("NSK"), resulting from a fire that occurred at the facility where the machinery and equipment was being stored. NSK filed this claim against Defendants, Oberle &

Associates, Inc. and Oberle LLC (collectively, "Oberle"), for breach of a bailment contract. Oberle denies that a bailment was created and further maintains that, even if a bailment did exist, it complied with the applicable standard of care. Oberle has asserted a third party claim against Whisenhunt Construction, Inc. ("Whisenhunt"). For the reasons detailed in this entry, we <u>GRANT</u> Plaintiff's Motion for Partial Summary Judgment.

## Factual Background

On or about September 6, 2006, Oberle employees transported the machinery and equipment at issue from NSK's premises to a warehouse to be stored. Oberle leased space in the warehouse from Crane Rentals, Inc. ("Crane"), who owned the facility.[1] NSK paid Oberle $4,367.73 to transport the equipment and thereafter paid Oberle a monthly fee to store the equipment.

In addition to Oberle, two other companies, Amcast Automotive and Third Party Defendant Whisenhunt, also leased space in the warehouse owned by Crane. Crane conducted fabrication operations in the facility as well. During the time period relevant to this litigation, Crane, Whisenhunt, and Oberle all had regular access to the warehouse. Crane employees Jeff Uphuas, Ben Rodeffer, and Tandy Allen had keys to the warehouse in order to conduct their fabrication operations. Employees of Oberle and Whisenhunt also had keys to the facility. NSK often accessed its machinery and equipment in the warehouse as well. However, NSK did not have a key, and thus, was required to contact

---

[1] At all times relevant to this lawsuit, Ron Oberle was the President of both Crane and Oberle.

Oberle to arrange access before entering the storage facility.

In January of 2007, a fire occurred at the warehouse where NSK's property was stored. According to NSK, the fire damaged its machinery and equipment to such an extent that it became unusable, and thus Oberle was unable to return it to NSK. It is undisputed that there was no fire suppression system installed at the warehouse. Specifically, the warehouse was not equipped with sprinklers or smoke detectors and there was no night watchmen patrolling the premises.

There is no indication in the record as to the official cause of the fire. However, Rachel Hickey, Oberle's Controller, testified by affidavit that the fire was determined "by the fire investigators to have started in the area of the warehouse that was being leased by Crane to Whisenhunt" and that "[i]t was also discovered that Whisenhunt had known accelerants in the exact area where the fire originated at the time of the fire." Hickey Aff. ¶¶ 9-10. Ms. Hickey also testified that "Oberle did nothing to cause the fire, and made sure that the area in the Crane facility that it leased from Crane was clean and safe." Id. ¶ 8.

On January 15, 2009, NSK filed its Complaint against Oberle, alleging breach of bailment contract. On November 16, 2009, Oberle moved for leave to file a Third Party Complaint against Whisenhunt, which was granted on December 8, 2009.

## Legal Analysis

I.  **Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of

4

the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

## II.  Discussion

"A bailment is an agreement, either express or implied, that one person will entrust personal property to another for a specific purpose and that when the purpose is accomplished the bailee will return the property to the bailor." Pitman v. Pitman, 717 N.E.2d 627, 631 (Ind. Ct. App. 1999) (citing Kottlowski v. Bridgestone/Firestone, Inc., 670 N.E.2d 78, 82 (Ind. Ct. App. 1996)). A bailment is created when: "(1) personal property belonging to a bailor is delivered into the exclusive possession of the bailee and

(2) the property is accepted by the bailee." Kottlowski, 670 N.E.2d at 82.

Here, the parties dispute whether a bailment was created between NSK and Oberle. The only point of contention is whether Oberle had "exclusive possession" of NSK's machinery and equipment after Oberle picked up NSK's property and was paid to transport it to the Crane warehouse to be stored. Oberle contends that, because other companies also leased space from Crane in the warehouse and had access to the premises where NSK's property was stored, Oberle did not have exclusive possession of the property as is required for a bailment to exist. Upon careful review of the facts as they have been presented to us, we disagree.

It is clear that NSK relinquished full control of its equipment to Oberle when NSK paid Oberle to pick up the property, transport it to the Crane warehouse, and store it in the designated space leased by Oberle within the warehouse. NSK did not possess a key to the warehouse, and, although it did access its equipment in the Crane warehouse on multiple occasions, in order to do so, it was required to first make arrangements with Oberle in order to gain access. In other words, without Oberle's cooperation, NSK could not access its machinery and equipment. Based on these facts, we conclude that Oberle clearly had the right to exclude others, including NSK as well as the other lessees of space in the warehouse, from accessing or exercising control over the equipment, and thus had exclusive possession of NSK's property. Accordingly, we find that a bailment was created.

Having determined that a bailment existed, we turn next to the question of

negligence. While the bailee has possession of the bailor's property, "the bailee must exercise the degree of care commensurate with the benefit he derives from the arrangement." United Farm Family Ins. Co. v. Riverside Auto Sales, 753 N.E.2d 681, 684-85 (Ind. Ct. App. 2001) (citing Norris Automotive Serv. v. Melton, 526 N.E.2d 1023, 1026 (Ind. Ct. App. 1988)). In most cases of bailment for hire, and as is the case here, the arrangement inures to the benefit of both parties.[2] In such situations, the bailee owes ordinary care. Id. at 685. Evidence that the bailor's property was received by the bailee in good condition, but returned damaged, creates an inference of negligence. Id. In the absence of contractual terms imposing strict liability, once this inference is created, the burden of production shifts to the bailee to produce evidence "tending to prove the loss, damage, or theft was occasioned without his fault or neglect." Norris Automotive, 526 N.E.2d at 1025 (citations omitted). If the bailee is able to produce evidence of due care, the burden of production shifts back to the bailor to "prove the bailee failed to act in conformity with the expected standard of care." Id. at 1026 (citations omitted). The determination of whether a bailee has complied with the expected standard of care is a question of fact for the trier of fact. Pitman, 717 N.E.2d at 631.

It is undisputed that NSK's machinery and equipment was received by Oberle in good condition and that it was never returned to NSK because it was damaged in the fire

---

[2] NSK benefitted by having free space at its premises and Oberle benefitted by receiving monthly payments for storage of the equipment as well as the payment to initially transport the property.

that occurred at the Crane warehouse. These facts suffice to create an inference of negligence on the part of Oberle. To rebut that inference, Oberle relies solely on the affidavit testimony of Rachel Hickey, Oberle's Controller, in which she testifies that "Oberle did nothing to cause the fire, and made sure that the area in the Crane facility that it leased from Crane was clean and safe." Hickey Aff. ¶ 8. According to Ms. Hickey, fire investigators determined that the fire started in the area of the warehouse that was being leased by Whisenhunt and that Whisenhunt stored "known accelerants in the exact area where the fire originated at the time of the fire." Id. ¶¶ 9-10.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a supporting affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. Pro. 56(c)(4). In its reply brief, NSK moved to strike these paragraphs of Ms. Hickey's affidavit, arguing that the statements contained in Paragraph 8 are conclusory, speculative, and have not been shown to be based on personal knowledge and that the statements contained in Paragraphs 9 and 10 are based on inadmissible hearsay and have not been shown to be within Ms. Hickey's personal knowledge. NSK further argues that Ms. Hickey is not competent to testify on the matters contained in Paragraphs 8 through 10.

We first address Paragraphs 9 and 10 of Ms. Hickey's affidavit. Oberle argues that an affiant's personal knowledge may be inferred from that individual's position within a company. While this is true in many cases, no such inference is permissible here. In her

8

position as Controller, Ms. Hickey is responsible for performing all of the accounting functions, including payroll. There is nothing inherent in these functions that would provide a basis for concluding that Ms. Hickey would have personal knowledge regarding the investigation of the fire at the warehouse solely by virtue of her position as Controller. Although Oberle asserts in its surreply that Ms. Hickey's averments in the challenged portion of her affidavit "are based upon [her] observations and investigation of the fire," (Def.'s Surreply at 3-4), it does not cite to evidence in the record establishing her involvement in the investigation regarding the fire, nor did Ms. Hickey provide testimony in her affidavit that she was personally involved in the investigation of the fire, or how she came to learn of the findings of the investigation. See <u>Visser v. Packer Engineering Associates, Inc.</u>, 924 F.2d 655, 659 (7th Cir. 1991) ("It is true that 'personal knowledge' includes inferences – all knowledge is inferential – and therefore opinions. But the inferences and opinions must be grounded in observation or other first-hand personal experience.") (internal citations omitted). Moreover, the information set out in Paragraphs 9 and 10 is not substantiated by any official document or other admissible evidence in the record before us. Accordingly, we find that there is an insufficient evidentiary basis for Ms. Hickey's personal knowledge and competence allowing her to testify as to the issues discussed in Paragraphs 9 and 10 of her affidavit, and these paragraphs are accordingly stricken.

      NSK has also moved to strike Paragraph 8 of Ms. Hickey's affidavit. We need not address this portion of NSK's motion, however, because the statements contained in

Paragraph 8, to wit, that Oberle "did nothing to cause the fire" and "made sure that the area in the Crane facility that it leased from Crane was clean and safe," are wholly conclusory and to a certain extent irrelevant ("clean and safe") and unsubstantiated. As such, they are insufficient to overcome the inference of negligence, even if not stricken. Ms. Hickey fails to provide any details or elaboration on the specific precautions taken by Oberle to authenticate or substantiate these conclusions. Without more information regarding the manner in which Oberle ensured the area was clean and safe, we are unable to determine even the meaning of those terms in this context.

For the foregoing reasons, we hold that a bailment for mutual benefit was created here and that an inference of negligence has been created that Oberle has failed to rebut. Accordingly, we <u>GRANT</u> NSK's Motion for Partial Summary Judgment.

IT IS SO ORDERED.

Date: _____05/20/2011_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

James K. Borcia
TRESSLER SODERSTROM MALONEY & PRIESS, LLP
jborcia@tsmp.com

Matthew D. Bruno
KIGHTLINGER & GRAY
mbruno@k-glaw.com

Ashley A. Howell
THE CINCINNATI INSURANCE COMPANY
ashley_howell@staffdefense.com

James J. Hutton
LAW OFICES, THE CINCINNATI INSURANCE COMPANY
jim_hutton@staffdefense.com

Thomas J. Jarzyniecki Jr.
KIGHTLINGER & GRAY
tjarzyniecki@k-glaw.com